In the United States District Court
for the District of Maryland

| Kevin Jackson | Supplemental Complaint |
| Plaintiff | |
| v. | Civil Action No. |
| Warden Rick Foxwell, et al. | RDB-13-2450 |
| Defendants | |

The rights of the plaintiff to file a supplemental complaint is governed by Federal Rules of Civil Procedure Rule 15(d). Each defendant is sued individually and in his official capacity. At all times in this complaint each defendant acted under color of state law.

BCDC Jail Administration and Correctional officers, Defendants demonstrated complete deliberate indifference to plaintiff (Jackson) and all pretrial detainees constitutional rights on during the Intake and booking process at the Baltimore Central Booking Intake Center (BCBIC) from May 19 2012 to May 22, 2012.

Plaintiff (Jackson) spent 3½ days in (BCBIC) waiting to complete the Intake process. Plaintiff spent 3½ days sleeping on the cold concrete floor, without a Mattress, nor blanket or sheets in a overcrowded holding cell infested with Mice and Roaches. He did not recieve the opportunity to take a shower. The holding cell was not swept or moped nor was the toilet cleaned. This was the first times of numerous and countless times he was exposed to second-hand smoke. The (BCBIC) staff demonstrated complete deliberate indifference by not trying to stop pretrial detainees from smoking and

To plaintiff (Jackson) by subjecting him to Cruel and unusual punishment under the umbrella of the 8th Amendment, violating his Due process rights of the 14th Amendment and his 5th Amendment Due process rights of the 5th Amendment of the U.S. Constitution. Line Entry #1 of the (BCDC) Detainee Handbook states on (page #5), the offender booking proccess is substantially reduced because of computer automation and computerized data system. See; Bibbs v. Early, 541 F 3d. 267 (5th Cir. 2008) Line Entry #2 thru - #12 of the BCDC Detainee Handbook

(BCDC) Jail Administration demonstrated complete deliberate indifference to plaintiff (Jackson) and all pretrial detainees by not providing the Detainee Orientation Handout or the Division of Detention and Pretrial Services Detainee Handbook (Exhibit 94P) upon entering the orientation process at (BCDC) or any copy of the Rules and Regulations at (BCDC). This is a 1st Amendment and Due Proccess Violation.

Plaintiff had continiously requested a Detainee Handbook since June of 2012. He submitted several grievance concerning this matter.

Plaintiff (Jackson) finally and only recieved a copy of the Detainee Handbook (Exhibit 94P) from the Head of the Grievance Deptartment on or about December 4, 2013 at a Step II (2) grievance hearing. The Head of

Administrator of the (BCDC) Grievance Department instructed Mr. Levine, the Supervisor of the Grievance Department to download me a copy of the Handbook (Exhibit 94P) from his computer. In a grievance reply from Mr. Levine to me, he stated that I could recieve a copy of the handbook from the library, but the library worker (female) said they did not have a copy. The grievance reply from Mr. Levine is entered as a (Exhibit) in the original complaint of this Civil Action.

Line Entry #2 (page 5 of Detainee Handbook) states: The handbook contains information that pretrial detainees need to know, ect.. Plaintiff states no copies of the Detainee Handbook are not in the Library, nor copies of the handbook are availible at any security posts to include the J.I. building, Sections J, E, F, Medical, Q, F, D or the Main Security Booth located on the second floor of the Main Jail. Plaintiff also asked several supervisors and Captins for a copy and was told they did not have one.

Line Entry #3 (page 5) of Detainee Handbook states there is a Inmate Council and a Inmate Council Representitive. Plaintiff states the Inmate Council has been eliminated by the Administration because they don't want it to exist because pre-trial detainees will be conscious of their constitutional rights applied to BCDC confinement

And they will realize how their rights are being violated.

Line Entry #4 (page 24) Detainee Handbook states; That Indigent pretrial inmates are eligible for the Indigent Kits. Plaintiff states that he NOR any of the Indigent Inmates have recieved a Indigent Kit since August 15, 2013. The Supreme court states Indigent prisoners are entiled to pen and paper to draft Legal documents and stamps to mail them, by their institution of Confinement. See; Bounds V. Smith, 430 U.S. 817, 828 n.17, 97 S.ct 1491, 1498 n.17, 52 L.Ed 2d 72, 83 (1977)

Line Entry #6 (page 38) of Detainee Handbook - Inmate Rules (numbers 100-503). The print of the rules are to small and are not clear by any standard. Jail administration shows deliberate indifference to the inmates rights to know the rules and regulations. The rules and regulations are not post anywhere in the (BCDC) for viewing. This acts as a control Mechanism. See; Birderman's chart on Penal Coercion and the Constitutional Rights of Institutionalized Persons Act (C.R.I.P.A.).

Line Entry #7 (43) of Detainee Handbook states; Inmates housed in the Jail Industries Building (J.I.) which is a seperate building from the Main Jail are entitled to go to the Public Defender office Located in the Main Jail building. Plaintiff (Jackson) was housed in the J.I. building from June of 2012 to December 2012, and nevers was

affored the opportunity to go to the public defender office were he would be allowed to make a phone call to his lawyer to discuss his case or legal strategy of defense. Nor make inquires to the activity of his case, as to what motions were filed by his public defender Michael Cooper. This constitutes a violation of his fundamental right to Access and use of the Court system. The denial of his communication with his public defender Michael Cooper caused a significant injury due to him not being able to inquire and file about a Brady Rule violation against the Baltimore City Police Dept. and the Assistant States Attorney assigned to his case which is a very complex legal matter. Also he could not excercise his right to the Notes of the Grand Jury testimoney and his right to know about disciplinary actions against the officers involved in his pending case. These rights are manifested by the combination of the 1st, 5th and 14th Amendments of the Constitutional.

Line Entry #8 (page 43) states: The content of Imates legal mail will not be read. On July 15, 2013, the jail search Team conducted a search of Q dorm and its respective inmates. The search Team members looked inside of Plaintiff (Jackson) legal package from the Center for Constitutional Rights that was clearly stamped "Legal Mail" by the (BCDC) mail room (whose address is 666 Broadway 7th Floor, New York New York 10009. The Search Team confiscated the following legal material ① his Jail house Lawyer Hanbook from the Center for

Constitutional Rights (2) a copy of an article from the District Attorney office about the April 2013 Federal Raid of (BCDC). The Center for Constitutional Rights is a legal establishment, Institution and entity because it employs staff Attorney's and legal assistants who have the license and authority to sue in Federal or State Court for violations of persons constitutional rights.

The plaintiff filed serveral grievance forms about this matter and his grievances was not answered unit October 2013 which is a violation of his Due process rights. The (BCDC) grievance office informed plaintiff (Jackson) that his grievance was transfered to the Intell Dept unit (see Exhibit of grievance form)(in the original complaint) and the he could not proceed to step II of the grievance process unit the Intell unit came to talk to him and investigated the grievance of plaintiff. Plaintiff states the Intell unit has not come to talk to him as of December 25, 2013 This ~~Another~~ is another violation of his Due process rights, and also a Liberty issue.

No prison officials are allowed to read an inmates legal mail, they can only inspect it for contraband. By Logic, the search team read the plaintiffs legal mail in order to determine and decide they would confiscate it. By confiscating the two legal items, Plaintiff (Jackson) was caused substantial injury because he lost the names of the arrested correctional officers (which is public information) that ~~arrested~~ were

arrested in the April 2013 Raid of (BCDC) because he intended for them to be defendants in this Civil Action No. RDB-13-2450. (2) the confiscated Jail house Lawyers Handbook instructed and guided the plaintiff on how to file this 1983 action and all subsequential complex steps were explained in this handbook. The search Team tried to stop the plaintiff (Jackson) from persuing his lawsuit. They demonstrated deliberate indifference to his constitutional rights of access to the courts, his attorney client privilege and right to be free from unreasonable search and Seizures. See; John v. NYC Dept. of Corrections, 183 F. Supp 2d 619 (S.D.NY. 2002)

Line Entry #9 (page 43) states that Inmates will be permitted to visit the Law Library at least once a week. Plaintiff states that he only visited the Law Library once During his first 15 months to conduct legal research and at the present times, he and the other Q section inmates are allowed to go to the Law Library once every 5 weeks when the Jail is not on "Lock down" or M.S.C. Plaintiff submitted the grievance reply about this matter as an Exhibit in the original complaint. Plaintiff (Jackson) assents and declares he has suffered an "actual injury" from the inadequate time to preform legal research to include, not being able to gather the correct information needed to file a Brady Rule Violation or work on a Motion to dismiss

or file a writ of Mandamus because his public defender does not provide adequate assistance. Plaintiff (Jackson) filed a grievance against his public Defender Michael Cooper to the Attorney Grievance Commission.

Line Entry #10 (page 48) - states: The office of Health and Safety will conduct weekly sanitation inspections of each housing unit. Plaintiff states that NO weekly sanitation inspections are done.

Line Entry #11 (page 50) states: It is the policy of the Dept. of Pretrial Detention Services to provide a Safe, healthful Enviroment. Plaintiff asserts and states that due to the Jail Administrations Lack of ability to control the illegal activity of the Black Guerrilla Family, a dangerous and nefarious enviroment and conditions were created in the (BCDC) that still exists at this present moment. The Black Guerrilla Family are the Culprits of the weekly stabbings of other inmates at (BCDC). BCDC officials and officers violate the 8th Amendment because they act with deliberate indifference to a (BCDC) condition that exposes an inmate to a unreasonable risk of serious harm deprives of a basic human need. See; Vance v. Peters, 97 F. 3d 987 (7th Cir. 1996); Barney v. Pulsipher, 143 F. 3d 1299, 1311 (10th Cir 1998).

The (BCDC) Grievance office has never returned any of the plaintiff's Step II grievance form back to him. The (BCDC) Grievance office has demonstrated deliberate indifference to the Procedure and Policies that govern the Grievance process at (BCDC). Therefore plaintiff (Jackson) should not have to rely on the grievance system at (BCDC). See; McCarthy v. Madigan, 503 U.S. 140 (1992). The Supreme Court held in the above cited case, that courts need to balance a person's right to go to sue over injustice against an institution's interest in having that person use whatever grievance system they have set up.

As a result of plaintiff (Jackson) not recieving a Inmate Indigent Kit which contains; Toothpaste, toothbrush, soap, Razor, deordarant, paper, pen and 5 stamped evelopes; since August 15 2013, the plaintiff suffered injury because he was forced to wash other inmates dirty clothes, and underwear and socks. Plaintiffs states this was the only way he was able to obtain the basic hygiene items he need and the stamps and paper and pen he needed to submit legal documents he drafted to the courts. The whole experience was degrading and humilating. Plaintiff states he has never had to wash other inmates clothes ever in his life until he was incarcerated at (BCDC). See; Gills v. Litscher, 468 F.3d 488 (7th Cir. 2006); Despain v. Uphoff, 264 F.3d 965 (10th Cir. 2001)

On or about the month of October of 2012 plaintiff (Jackson) develop what he presumed was (Staph) infection in back of his head because he has had the Staph infection before in his head. Plaintiff filled out a request form and had to wait at least a week or more to see the physician Assistant (P.A.). At this Time the (P.A.) squeezed the boil and pus squirted out, which was very painful. The plaintiff stated he thought it was Staph infection but the (P.A.) stated the only way to tell is to take a culture and send it out to a lab. The (P.A.) did not take a culture. Instead the (P.A) just gave him a perscription for Anti-biotics. Medical procedure states that a culture should be done to see if the boil was not MRSA, a drug-resistant and potentially life-threating form of Staph infection. Plaintiff states he now has a bald spot and lump is the same exact spot as the suspected area of the Staph infection. Medical Department showed deliberate indifference and negligence to plaintiff Medical needs.

See; Scott V. Ambani, 577 F.3d 642 (6th cir. 2009)
Spruill V. Gills, 372 F.3d 218 (3d cir. 2004)
Meloy V. Bachmeier, 302 F.3d 845, 849 (8th cir. 2002).

see: Department of Justice investigation of the West Chester County Jail (New York State)

Plaintiff (Jackson) states that he has suffered emotional injury from the unconstitutional conditions of confinement at (BCDC) in particular the dangerous and nefarious condition created by the criminal activities of the Black Guerrilla Family and correction officer's and their supervisors. Plaintiff had to seek mental health treatment. See Exhibt 392(D) page 1 and 2

Exhibit 39(T) and Exhibit 549(M) - Shows treatment of plaintiff glaucoma conditions and that he has eye pain from a increase in eye pressure. Officers refused to let plaintiff go to Medical for eye drops 17 times Exhibit (878)F - female officer Carrebean cuts inmates phone time in order for members of the Black Guerrilla Family to get extra phone time on Q section

Exhibit 469(X) - The lock on the Q section Mailbox is still broken, its been broken for 6 months and inmates go in the Mailbox and take peoples Mail. In the first grievance form submited in the original complaint the grievance Dept. states they would inform the Maintenance Dept. of the problem (see grievance form) Now they state it is not the Maintenance Dept. issue to fix it.

Exhibit 108(R) - Mattresses are stored under the steps in Q section and are not sanitized or clean. Mattresses in the J.I. builing dorm 500 are stored in a closet and are not sanitized nor cleaned before issueance.

Line Entry #12 (page 57) States: The Inmate Council is to moniter the implementation of the 1993 Revised Consolidation Decree in Duvall, et al V. Erhlich, et al, Civil Action No. JRM-94-26541. This Civil action governed; set Standards of Decency at BCDC. This proves that (BCDC) has a long history of unconstitutional conditions of confinement. The elimination of the Inmate Council by Jail Administration constitutes deliberate indifference to all pretrial detainess Constitutional rights and the Constitutional Rights of Institutionalized Persons Act (CRIPA) and united States ratified human rights treaties that addresses the rights of prisoners: the International Convenant on Civil and Political Rights and the Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment. Finally, The United States is a member of the Organization of the American States (OAS) and is bound to the provisions of the American-Declaration on the Rights and Duties of Man.

The Defendants are liable in their individual capacities for their personal wrongdoing or supervisory actions that violated constitutional norms and treatment or conditions that are atypical in relation to the ordinary incidents of prison life. See; Shaw V. Stroud, 13 F.3d 791, 799 (4th cir. 1994)

\* See: *Farmer V. Brennan*, 511 U.S. 825 (1994)

- Justice Blackmun concurring opinion: Where a legislature refuses to fund a prison adequately, the resulting barbaric conditions should not be immune from Constitutional scrutiny simply because no prison official acted culpably. [...] The responsibility for subminimal conditions in any prison inevitably is diffuse, and often borne at least in part, by the legislature. Yet, regardless of what state actor or institution caused the harm and with what intent, the experience of the inmate is the same. A punishment is simply no less cruel or unusual because its harm is unintended. In view of this obvious fact, there is no reason to believe that, in adopting the Eighth Amendment, the Framers intended to prohibit cruel and unusual punishments only when they were inflicted intentionally.

## Verification

I have read the foregoing complaint and hereby verify that the matters alleged in the original complaint and all supplemental complaints and Declarations therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true/correct.

Executed at Baltimore, MD on December 29, 2013

*Kevin W Jackson*            Kevin W Jackson #3807114
Signature

Certificate of Service

I hereby certify that on this 30th day of December 2013 a copy of ① Supplemental Complaint ② Exhibits was mailed postage prepaid to

Clerk of Court
U.S District Court house
101 W. Lombard St.
Baltimore, MD 21202

*Kevin W Jackson*

Kevin W Jackson
inmate # 3807114